### SHURN v. WILKINSON.

#### Opinion delivered October 29, 1917.

1. ACKNOWLEDGMENTS—TERMS OF.—An acknowledgment can not be
   any broader than the language of the deed itself.

2. HOMESTEAD—CONVEYANCE—FAILURE OF WIFE TO JOIN.—A convey-
   ance of a homestead is invalid where the wife does not join in the
   execution, but merely relinquishes dower.

3. MORTGAGES—RELEASE OF VALID SECURITY FOR INVALID SECURITY.—
   SUBROGATION.—A mortgagee who releases, in good faith, a valid
   mortgage, for one which was invalid for the failure of the wife
   to join in its execution, may treat the former mortgage as sub-
   sisting and foreclose upon it.

4.  MORTGAGES—RELEASE OF VALID MORTGAGE FOR INVALID ONE—APPLI-
CATION OF PAYMENTS.—S. mortgaged certain property to W. for
$400, the mortgage being valid.  Thereafter S. having become in-
debted to W. in additional sums, executed another mortgage cov-
ering the total indebtedness, the first mortgage being surrendered.
The second mortgage was invalid·under the homestead statute.
*Held,* equity would restore the lien of the first mortgage, and
payments made by S. subsequently to the execution of the first
mortgage, would be ordered applied to the payment of the in-
debtedness which accrued since then, and the remainder, if any,
to the payment of the first mortgage debt.

Appeal from St. Francis chancery court, *Edward D.
Robertson,* chancellor; reversed.

*Morrow & Harrelson,* for appellants.

1.  The trust deed was not given to secure a debt due
for purchase money. 114 Ark. 14.

2.  The wife did not join in the execution of the deed
as required for the conveyance of a homestead.  57 Ark.
242; Kirby's Digest § 3901; 62 Ark. 431; 90 *Id.* 113;
152 N. W. 809; 64 Ark. 494.

3.  The debt is usurious.  62 Ark. 370; 64 *Id.* 69.
Usury may be proven by circumstances.  199 Fed. 406.
See also, 50 N. Y. 437; 22 Hun. 208; 1 Hill, 227; 54 So. 166.

*Walter Gorman,* for appellees.

1.  The deed was executed to secure a purchase
money debt.  66 Ark. 367; 69 *Id.* 123, 21 Cyc. 533; 15
A. & E. Enc. L. (2nd. Ed.) 673.  Wilkinson was entitled
to be subrogated to the rights of Jones. 114 Ark. 14; 44
*Id.* 504.

2.  The wife joined in the execution of the deed.
Kirby's Digest, § 3901; 90 Ark. 116; 87 *Id.* 371; 91 *Id.*
268; 94 *Id.* 613.

3. No usury is proven.  91 Ark. 462; 74 *Id.* 252; 87
*Id.* 539; 54 *Id.* 571; 57 *Id.* 251; 68 *Id.* 164; 62 *Id.* 380.

The burden was on appellant to show usury. 57 Ark.
257; 59 *Id.* 366; 62 *Id.* 491; 65 *Id.* 316; 25 *Id.* 191.  An
intent to take is necessary.  A mere mistake or error in
calculation is not sufficient. 75 Ark. 387; 83 *Id.* 31; 87 *Id.*
534; 75 *Id.* 387.

4. The findings of a chancellor will not be disturbed unless clearly against the weight of the evidence. 81 Ark. 68; 91 *Id.* 268; 100 *Id.* 555; 97 *Id.* 566; 92 *Id.* 30; 89 *Id.* 309.

### STATEMENT OF FACTS.

Appellee instituted this action in the chancery court against appellants to foreclose a mortgage on real estate. Appellants answered and as a defense to the action set up usury in the mortgage indebtedness. They also alleged that the mortgaged property was their homestead and that the mortgage was void because the wife did not acknowledge the same in compliance with our statutes relating to the acknowledgment of mortgages on homesteads.

The facts are as follows: On December 12, 1900, Willie Shurn bought the eighty acres of land in controversy from J. A. Jones paying him $50 in cash and giving him a mortgage on the land for $350, the balance of the purchase money. He immediately moved on the land and it became his homestead. On the 25th day of March, 1904, a mortgage on the land was executed by Willie Shurn and Bettie Shurn, his wife, to S. E. Bradshaw to secure the sum of $44. This deed of trust commenced as follows: "This deed made the 25th day of March, 1904, by and between Willie Shurn and Bettie Shurn, his wife, of the County of St. Francis, State of Arkansas, parties of the first part." The granting clause contains the following: "That the said parties of the first part for and in consideration of the debt and trust hereinafter mentioned * * * do by these presents grant, bargain, and sell unto the said party of the second part an absolute estate, in fee simple, including all our right or claim of homestead, in and to the following described real and personal estate, situated and being in the County of St. Francis, in the State of Arkansas, towit":

The deed also contains the following: "And said parties of the first part covenant with the said parties of the second and third parts that no part of said real and

personal estate is mortgaged, pledged held in trust or otherwise encumbered than as herein expressed. And do hereby waive and relinquish unto the said party of the second part, and his heirs, executors or assigns all right, title and benefit whatever in or to said property, which are given or may hereinafter be acquired by any exemption or homestead laws of the State of Arkansas. And Bettie Shurn, wife of the said Willie Shurn, for the consideration above set forth, do hereby relinquish and forever release and quitclaim unto the said party of the second part all her right, title or interest or possibility of dower in and to the above granted real estate.''

The mortgage was given to secure a note for $400 with interest at 10 per cent. per annum from date until paid. The deed was properly acknowledged by Willie Shurn and Bettie Shurn, his wife. In July, 1906, Bradshaw transferred the note and the deed of trust given to secure it to C. M. Wilkinson. On the 16th day of March, 1907, Willie Shurn and wife executed a mortgage on this property to C. M. Wilkinson. In this mortgage Bettie Shurn joined with her husband in the execution of the mortgage and relinquished her homestead rights thereto. Indeed, the mortgage was in all respects similar in form to the one given to Bradshaw and contained identically the same clauses which we have copied above except that in the first clause copied above where the name of Bradshaw appears is the name of C. M. Wilkinson. This mortgage was given to secure an indebtedness of $787.10, evidenced by a promissory note of even date bearing interest from maturity at the rate of 10 per cent. per annum until paid. This mortgage was also properly acknowledged by Willie Shurn and Bettie Shurn. On the 8th day of April, 1911, Willie Shurn executed the mortgage in question in the place of the former mortgage executed by him on his homestead. This mortgage commences as follows: ''This deed made the 8th day of April, 1911, by and between Willie Shurn of the County of St. Francis, State of Arkansas, parties of the first part.'' The granting clause contains the following:

"Witnesseth: That the said parties of the first part for and in consideration of the debt and trust hereinafter mentioned and created, and one dollar to them in hand paid by the said party of the second part, the receipt of which is hereby acknowledged, do by these presents, grant , bargain and sell unto the said party of the second part an absolute 'estate, in fee simple, including all our rights or claim of homestead, in and to the following described real and personal estate, situated and being in the County of St. Francis, and State of Arkansas, towit:''

It also contains the following: ''And the said parties of the first part covenant with the said parties of the second and third parts that no part of said real and personal estate is mortgaged, pledged, held in trust or otherwise encumbered than as herein expressed. And do hereby waive and relinquish unto the said party of the second part, and his heirs, executors or assigns all right, title and benefit whatever in or to said property, which are given or may hereafter be acquired by any exemption of homestead laws of the State of Arkansas. And Bettie Shurn, wife of the said Willie Shurn, for the consideration above set forth, do hereby relinquish and forever release and quitclaim unto the said party of the second part all her right, title or interest or possibility of dower in and to the above granted real estate.''

This mortgage was given to secure a note for $1,075, and certain supplies to be furnished Willie Shurn by C. M. Wilkinson. According to the testimony of Willie Shurn, the indebtedness secured by this mortgage and embraced in the complaint herein contains items which made it usurious.

On the other hand according to the testimony of Wilkinson there was no usury and he stated in positive terms that there was no intention on his part to charge any interest exceeding the rate of 10 per cent. per annum and he did not charge Willie Shurn with interest in excess of 10 per cent. per annum in any of his dealings.

The $400 note, to secure which, Willie Shurn executed a mortgage to Bradshaw and which Bradshaw transferred to Wilkinson, was never paid. It, with the accrued interest, became a part of the indebtedness of Willie Shurn to Wilkinson and was so charged in the former's account. When the new mortgage was taken in substitution of the old one, it was not the intention of the parties to release the old mortgage until the new one became effective.

The chancellor found that Willie Shurn was indebted to C. M. Wilkinson, principal and interest, in the sum of $1,211.95 and judgment was rendered for that sum, and a foreclosure of the mortgage was decreed, if that sum was not paid within twenty days from the date of the decree. The case is here on appeal. Other testimony will be referred to in the opinion.

HART, J., (after stating the facts). The principal contention of appellants is that the mortgage is void because it was not executed in compliance with section 3901 of Kirby's Digest concerning conveyances of the homestead. The statute provides in effect that no conveyance, mortgage, or other instrument affecting the homestead of any married man shall be of any validity unless his wife joins in the execution of said instrument and acknowledges the same.

(1-2) It will be remembered that the mortgage executed on the 8th day of April, 1911, is the one sought to be foreclosed. In that mortgage Willie Shurn alone is described as the party of the first part. It is true the granting clause contains the words "including all our right or claim of homestead", but it will be noted from the granting clause which we have quoted in the statement of facts that this referred to "parties of the first part" and as we have just seen Willie Shurn alone is described as "parties of the first part." We have copied in the statement of facts that part of the mortgage which relates to the release of the homestead and the relinquishment of dower and it is not necessary to repeat it here. It will be noted from reading that

portion of the mortgage that "the parties of the first part waive and relinquish unto the party of the second part all right, title and benefit whatever in said property which are given by any exemptions or homestead laws of the State of Arkansas." Just following this recital Bettie Shurn relinquishes dower. It is true that in the acknowledgment it is recited that Bettie Shurn relinquished both dower and homestead but the acknowledgment can not be any broader than the language of the deed itself. When the language of the deed of trust is considered in its entirety it is perfectly evident that Bettie Shurn did not join in the execution of the deed but only relinquished dower therein. This was not a sufficient compliance with the provisions of our statute regulating the conveyance of the homestead and the mortgage is therefore void within the rule announced in *Pipkin* v. *Williams*, 57 Ark. 242, and subsequent cases decided by this court. An attempt is made by counsel for appellees to bring the case within the rule laid down in *Sledge & Norfleet Company* v. *Craig*, 87 Ark. 371. In that case the name of the wife was not mentioned in the deed at all but she signed the deed with her husband. The deed contained no clause relinquishing the wife's dower and the court held that under these circumstances her signature to the deed itself must be construed to evidence an intention on her part to join in the execution of the deed. This construction was placed upon it in order to give some effect to her signature. No such state of facts obtains here. The name of the wife only appears in the deed where she in express terms relinquishes dower. Her husband is described throughout the deed as "the parties of the first part" and the deed expressly names "the parties of the first part" in the granting clause. It also specifically describes "the parties of the first part" as waiving and relinquishing all right of homestead. Thus it will be seen from the language of the deed itself that the wife only relinquished dower. Therefore the case does not fall within the rule announced in *Sledge & Norfleet Co.* v. *Craig, supra*. Neither does

it fall within the rule announced in *Gantt* v. *Hildreth,*
90 Ark. 113. In that case the deed recited that the wife
relinquished and released all her rights of dower and
homestead. The court said that this showed clearly and
unequivocally that her intention was to join her husband
in the conveyance of the homestead. As above stated the
language of the deed of trust itself shows that the wife
did not intend to relinquish her right of homestead but
that she only relinquished dower. This is shown by the
clause which recites that she only relinquished her dower
and also by the recital just above it that "the parties
of the first part" (meaning the husband) waived and
relinquished all rights of homestead. It follows that the
chancellor erred in decreeing a foreclosure of the mort-
gage prayed for in the complaint.

(3) The record does show, however, that the wife
joined in the execution of the mortgage of the 16th day of
March, 1907. According to the recitations of that mort-
gage she and her husband were "parties of the first part"
and she joined him in the execution of the mortgage. The
deed recites that "the parties of the first part    *    *    *
do by these presents grant, bargain and sell unto the
said party of the second part an absolute estate in fee
simple including all our right or claim of homestead."
It also contains another clause in which "the parties of
the first part" waive and relinquish all their right of
homestead. This deed of trust was properly acknowledged
and constituted a valid conveyance of the homestead
under our statutes. When Wilkinson accepted the new
mortgage with the name of his wife signed to it and the
proper certificate of acknowledgment he was justified
in assuming that it was executed by her in proper form.
The record shows that he did not intend to relinquish
the first mortgage until he had secured a new valid one.
Having surrendered a valid security for another which
proved invalid because of the wife failing to join in the
conveyance, Wilkinson is entitled to treat the mortgage
of March 16, 1907, as a subsisting mortgage and to fore-

close it for the debt secured by it. *Davies* v. *Pugh*, 81 Ark. 253, and *Roark* v. *Matthews*, 125 Ark. 378.

On the question of usury it may be stated that the record shows that there was no intention on the part of Wilkinson to charge Shurn a rate of interest in excess of 10 per cent. per annum. There is no claim even that there was any usury in the mortgage executed on the 16th day of March, 1907. This mortgage was given to secure a debt of $787.10 evidenced by a promissory note of even date due and payable on November 1, 1907, with interest from maturity at the rate of 10 per cent. per annum until paid. No part of this mortgage has been paid and it is a valid mortgage and we are of the opinion that for the reason given above, Wilkinson has the right to have foreclosure proceedings on this mortgage.

It follows that the decree will be reversed and the cause remanded with directions to the chancellor to enter a decree in accordance with this opinion.

## ON REHEARING.

HART, J. (4) Counsel for appellants admit the correctness of the conclusions of law of the court but claim that they are not applicable to the facts of this case. The property involved in this suit is the homestead of Willie Shurn. As pointed out in our original opinion, the mortgage of March 16, 1907, was executed in conformance with our statutes in regard to the conveyance of the homestead, and was valid. Wilkinson was a merchant and Shurn continued to trade with him so that on the 11th day of April, 1908, Shurn owed Wilkinson $860 and gave a new mortgage on the same property to secure the indebtedness. Bettie Shurn, the wife of Willie Shurn, did not join in the execution of this mortgage as provided by our statute; but only relinquished dower in the land. Shurn continued to buy goods from Wilkinson and on the 8th day of April, 1911, owed him $1,075. Shurn executed a new mortgage on this homestead to Wilkinson to secure this sum. His wife did not join in the execution of this mortgage but only relinquished her dower in the property.

For this reason, as pointed out in our original opinion, this mortgage was invalid. For the same reason, the mortgage dated April 11, 1908, was also invalid. It is fairly inferable from the whole record that it was the intention of the parties that the new mortgages should be executed in the place of the old ones. In their motion for rehearing counsel set out payments to the amount of several hundred dollars, which have been made since the execution of the mortgage of March 16, 1907. They claim that these payments should be applied to the extinguishment of the mortgage of March 16, 1907. This is in application of the general rule of payments. That is to say, in the absence of an agreement or instruction to the contrary, payments and credits should be applied to the extinguishment of those items which are earliest in point of time. But the application of this general rule would defeat the equities upon which our decision was based. Equity looks through the mere form of a transaction to the substance. In the application of this maxim in *Wooster v. Cavender*, 54 Ark. 153, the court held that when a senior mortgagee in good faith and without culpable negligence satisfied the lien of his mortgage on the record, in ignorance of the existence of an intervening mortgage on the same premises, and took a second mortgage as a substitute, equity will restore the lien of the first mortgage provided it can be done without working hardship or injustice to innocent parties. In discussing the principle in an opinion on rehearing in *American Savings Bank & Trust Company* v. *Helgesen et al.*, Ann. Cas. 1913, A-390, the Supreme Court of the State of Washington said:

"The cancellation of the old mortgage and the substitution of the new one were contemporaneous acts. The manifest intention of all parties interested and participating was not to discharge the lien of the mortgage but to continue it. The purpose was not to create a new incumbrance but merely to change the form of the old. A court of equity will look straight to the substance of the

transaction, rather than give heed to the mere form which it may assume. As between the parties it would be plainly inequitable to permit the release of the old mortgage, which was intended only to give place to a valid new one, to have any operative force when the new mortgage contrary to all intention was ineffectual. The new notes and mortgage were not given in satisfaction, but in renewal of the debt and on the same security. By a doctrine closely akin to that of equitable subrogation—and it seems to us one founded in equal equity and reason—the old mortgage, though released, must be substituted for the new one and treated as a continuing lien securing the continuing debt. This is certainly true as between the original parties. The new mortgage failing, the release was without consideration and also fails.''

In *Swift* v. *Kraemer,* 13 Cal. 526, 73 Am. Dec. 603, the court said:

''We regard the cancellation of the old mortgages and the substitution of the new as contemporaneous acts. It was not creating a new incumbrance, but simply changing the form of the old. A court of equity, looking to the substance of such a transaction, would not permit a release intended to be effectual only by force of, and for the purpose of giving effect to the last mortgage to be set up, even if the last mortgage was inoperative.''

The same equitable principle applies here, and a court of equity will afford relief and restore the lien on the homestead for the security of the debt of March 16, 1907. If this debt could be reduced by the subsequent payments instead of applying them to the satisfaction of the new debt, this equitable principle would afford no relief. We have thought it best, however, to change the directions to the chancery court.

The cause will be remanded to the chancery court to apply the payments made subsequently to the execution of the mortgage of March 16, 1907, first to the payment of the indebtedness which has accrued since that time and the remainder, if any, to the payment of the

mortgage executed on March 16, 1907. A foreclosure of this mortgage will then be decreed for the payment of the amount so found to be due under it. It is so ordered.