BUCKEYE COTTON OIL COMPANY *v.* WESTERFIELD

4-2722

Opinion delivered November 21, 1932.

*Cockrill & Armistead,* for appellant.

*Clark & Clark* and *George A. McConnell,* for appellees.

MEHAFFY, J. Sometime prior to July 5, 1927, C. W. Jones entered into a contract with the Continental Gin Company for the purchase of the gin machinery involved in this suit. The machinery was delivered at Conway on July 5, 1927. The agreement was that one-third of the purchase price was to be paid cash, but when the property was delivered Jones was unable to make the cash payment, and the Continental Gin Company took the note of Jones and Eula H. Jones, his wife, in the sum of $2,317, due September 1, 1927, secured by mortgage dated July 5, 1927, on one acre of ground on which the gin was located, and also on the machinery purchased by Jones.

On the same date Jones and his wife executed two promissory notes in the amount of $1,158 each to the Continental Gin Company, one note due November 1, 1928, and one due December 1, 1928. By the terms of the notes, title to the gin machinery was to remain in the Continental Gin Company until the notes were paid. On February 27, 1928, Jones and wife executed two promissory notes to J. S. Westerfield, one note for $500 due August 1, 1929, and one note for $3,500 due February 27, 1930. Westerfield did not at the time advance to Jones the $4,000, but advanced $1,816,69, and the balance of the $4,000 was a debt from Jones to Westerfield secured by mortgage on Jones' home. To secure the payment of this $4,000, Jones executed a mortgage on the same property, the one acre of ground and gin machinery, which was described in the mortgage to the Continental Gin Company. This mortgage executed on February 27 was recorded on March 1 1929. Of the cash advanced by Westerfield at the time Jones executed the notes and mortgage, $579.85 was paid to the Continental Gin Company in satisfaction of its note and mortgage executed by Jones and his wife. On February 3, 1930, the Buckeye Cotton Oil Company purchased from the Continental Gin Company the two title-retaining notes of Jones and wife, and paid therefor the sum of $2,299.89, the amount of principal and interest due, and the Buckeye Cotton Oil Company took an assignment of the notes without recourse, and on the same day, February 3, 1930, the Buckeye Cotton Oil Company loaned to Jones and wife the sum of $3,000 and took three notes of $1,000 each. The Buckeye Cotton Oil Company did not actually let Jones have the $3,000, but the notes which it had purchased from the Continental Gin Company, which Jones owed, together with the cash which it let Jones have at that time, amounted to $3,000. The three promissory notes given by Jones and wife to the Buckeye Cotton Oil Company, above mentioned, for $1,000 each were due November 1, 1930, November 1, 1931, and November 1, 1932. On the same day, February 3, 1930, Jones and wife, to secure the payment

of the three notes, executed and delivered to the Buckeye Cotton Oil Company a mortgage on the same real estate and gin machinery mentioned above. This mortgage was recorded on April 4, 1930.

Suit was begun in the Faulkner Chancery Court by the Arkansas Foundry Company to enforce a materialman's lien. The appellee, Westerfield, filed answer and cross-complaint, in which he claimed a first lien on the real property and gin machinery in question, and asked that the Buckeye Cotton Oil Company be made a party. The Buckeye Cotton Oil Company filed its answer and cross-complaint, setting up its notes and mortgage and asking that its lien be adjudged superior and paramount to the rights of the other parties. It also asked in its cross-complaint that, if the court found that the Continental Gin Company had waived the title-retaining provisions of its notes, the Buckeye Cotton Oil Company have judgment against the Continental Gin Company for the amount due on the notes purchased from the Continental Gin Company. Westerfield contended that his mortgage was superior and paramount to any claim of any of the other parties to the suit. The Buckeye Cotton Oil Company contended that its lien was superior and paramount to the interest of any of the parties to the suit. The Buckeye Cotton Oil Company contended that by reason of the purchase of the title-retaining notes from the Continental Gin Company its rights under these notes was superior to the claim of Westerfield. It also claimed that if the title-retaining provisions in the notes had been waived by the Continental Gin Company it was entitled to a judgment against the Continental Gin Company.

Westerfield testified that, when he took the notes and mortgage from Jones and paid the balance due on the mortgage to the Continental Gin Company, he was informed by the representative of the gin company that the amount he paid it paid the entire debt, and that, unless he had so understood it from the gin company, he would not have loaned the money and taken the notes and mortgage.

W. C. McGinley, representative of the Continental Gin Company, testified that he told Westerfield that that paid the mortgage, but that there were title retaining notes held by it which were given for the purchase price of the machinery. This testimony is contradicted by Westerfield.

W. F. Bradford, representative of the Buckeye Cotton Oil Company, testified about the purchase of the title-retaining notes from the Continental Gin Company, and introduced the notes and letter. The evidence was in conflict, and the chancellor found that Jones and wife were indebted to Westerfield in the sum of $4,440, for which he should have judgment, and that this sum should bear interest at the rate of 6 per cent. per annum until paid. That Westerfield's debt was secured by mortgage on the real estate and gin machinery, and that his lien was superior to any right, title, interest or lien of any other parties to the suit. The court also found that Jones and wife were indebted to the Buckeye Cotton Oil Company in the sum of $3,387.50, and that Jones was further indebted to the Buckeye Cotton Oil Company in the sum of $327.69, and that these amounts should bear interest at 6 per cent. per annum until paid. The court further found that the indebtedness due the Buckeye Cotton Oil Company was secured by a mortgage executed by Jones and wife dated February 3, 1930, and that this mortgage constituted a lien against the property above mentioned, and that this lien was subordinate to the lien of Westerfield, but superior to any right, title, interest or lien of the other parties to the suit. The court also found that the indebtedness due Westerfield and the Buckeye Cotton Oil Company was past due, and that each was entitled to a decree for the amounts above mentioned, and also found that the Buckeye Cotton Oil Company had no cause of action against the Continental Gin Company. There was a decree and judgment for the amounts above mentioned, and for the foreclosure of the mortgage and for sale of the property if the amounts were not paid. It was provided in the decree that the commissioner should

first pay the cost and expense of sale and costs of suit and then pay Westerfield the amount of his decree with interest; that he should then pay to the Buckeye Cotton Oil Company the amount of its decree with interest; that the remainder, if any, should be held subject to the orders of the court. It was also ordered and decreed that the cross-complaint of the Buckeye Cotton Oil Company be dismissed as to the Continental Gin Company.

It is contended by appellant that the Continental Gin Company did not waive title. It cites and relies on *Jordan v. Wilkerson & Carroll Cotton Co.*, 152 Ark. 533, 238 S. W. 780. In that case the court said: "Immediately after sale, and in ignorance of the fact that the purchaser had executed a mortgage, the seller took a mortgage to secure the purchase money. The first mortgage was given by the seller at a time when the vendor had title, and the court said that the first mortgagee was not misled to its disadvantage, and that it was manifest that appellant would not have accepted the mortgage in lieu of the retention of its title if it had actually known that its vendee had theretofore executed a mortgage to appellee." The court stated that under the circumstances in that case appellant, in good conscience and equity, should have been restored its rights under the note and contract in which it retained title. The court said: "This equitable principle was applied by this court in the restoration of a senior mortgagee's prior lien, where the senior mortgagee through ignorance of an intervening mortgage to a third party had taken a renewal mortgage and satisfied the first or original mortgage of record." The court cites as announcing the same doctrine, *Wooster v. Cavender*, 54 Ark. 153, 15 S. W. 192, and *Shurn v. Wilkinson*, 131 Ark. 167, 198 S. W. 279.

The question we have here was not decided or discussed in either of those cases. In the Wooster case, Judge HEMINGWAY, speaking for the court, said: "As the appellees acted in good faith and without culpable neglect under a mistake as to a material fact, it is within the ordinary powers of a court of equity to grant them

relief, provided it can be done without working hardship or injustice to innocent parties. In the Shurn case, *supra,* the court reaffirmed the doctrine announced in the case of *Wooster* v. *Wilkerson.* None of these cases in any way modify or change the rule announced in the case of *Thorton* v. *Findley,* 97 Ark. 432, 134 S. W. 627. This court said in the last-mentioned case: "And, as a general rule, if the vendor takes a mortgage or other security for the price without their reserving title, such act will be regarded as a waiver of the condition of the original sale and an election to consider the sale as absolute." There is nothing in the mortgage to the Continental Gin Company reserving title. When the Continental Gin Company took a mortgage on the machinery without reserving title, such act was a waiver of the title-retaining provision in the note. There is some conflict of authority as to the effect of taking a mortgage to secure the payment of the purchase price of property where the vendor has retained title. Taking a mortgage to secure the payment is inconsistent with ownership in the vendor. If the title remains in the seller and he takes a mortgage, he would be taking a mortgage on his own property. This being true, it is immaterial whether the vendor takes a mortgage on the property sold for all or only a part of his debt, because the taking of the mortgage is a recognition of title in the purchaser and is a waiver of the title-retaining provision of the note. Again, when Westerfield took his mortgage, he testified that he paid the Continental Gin Company $579.85, and was told that that settled the debt. This evidence is contradicted by the witness for the gin company, but he testified that he would not have paid the money to the gin company if he had known it claimed title to the property. Moreover, the gin company accepted the money and knew at the time that Westerfield was lending the money to Jones and taking a mortgage on the property as security. It is next contended that the Buckeye Cotton Oil Company did not waive title. What we have said above as to the mortgage given to the Continental Gin Company applies here. In

addition to what we have said, the Buckeye Cotton Oil Company purchased the notes from the Continental Gin Company, and the notes were transferred without recourse. In addition to the amount of the note purchased from the Continental Gin Company, the Buckeye Cotton Oil Company advanced Jones enough money to make the loan $3,000. For this amount it took from Jones three notes for $1,000 each, and at the same time took a mortgage on the gin machinery to secure the payment of these three notes. There was no provision either in the notes or mortgages reserving title. This was inconsistent with a claim of title in itself. It took these notes and mortgage after Westerfield's mortgage and with a knowledge of the Westerfield prior mortgage on the same property. It would make no difference whether the Continental Gin Company had waived the title retained in the notes or not. The Buckeye Cotton Oil Company waived its rights and, since the transfer of the debt was without recourse, it would have no claim against the Continental Gin Company. The Buckeye Cotton Oil Company knew when it purchased the debt that Jones had given a mortgage to the Continental Gin Company on the property, and, if this was a waiver, the Buckeye Cotton Oil Company knew as much about it as the Continental Gin Company.

We find no error, and the decree is affirmed.