## THORNTON *v.* FINDLEY.

### Opinion delivered January 30, 1911.

1. MORTGAGES—REMEDIES OF CHATTEL MORTGAGEE.—The holder of a chattel mortgage may, upon the mortgagor's default, sue at law to recover the mortgaged chattel or for its conversion, or he may sue in equity for the foreclosure of the lien which he has by virtue of the mortgage. (Page 434.)

2. SALES OF CHATTELS—INTEREST OF CONDITIONAL VENDEE.—A vendee of personal property who has paid part of the purchase money under an agreement that title shall remain in the vendor until the purchase money is paid has an interest therein which he can mortgage. (Page 435.)

3. SAME—CONDITIONAL SALE—REMEDIES OF VENDOR.—Where a chattel is sold with reservation of title in the vendor until the purchase money is paid, the vendor at maturity of the debt may elect whether to treat the contract at an end and thus cancel the debt, or to affirm the sale and make it absolute. (Page 435.)

4. SAME—CONDITIONAL SALE—ELECTION OF REMEDIES.—As a general rule, where a vendor of a chattel sold with reservation of title as security for purchase money subsequently takes a mortgage or other security for the price without then reserving title, such act will be deemed a waiver of the above condition and an election to consider the sale as absolute. (Page 435.)

5.  MORTGAGES—NECESSITY OF RECORD.—A mortgage is not a valid lien, in the absence of possession, as against other mortgagees, purchasers or creditors acquiring liens thereon, until it is filed for record. (Page 436.)

6.  SAME—PRIORITY.—Where a vendor of a chattel who reserved title until the purchase money was paid subsequently took a mortgage to secure the purchase money, he will be held to have waived the reservation of title; and where he neglected to record the mortgage for several months, a prior mortgage upon the chattel which was recorded before his mortgage was placed upon the record will have priority. (Page 436.)

Appeal from Craighead Chancery Court, Western District; *Edward D. Robertson,* Chancellor; reversed.

*Basil Baker,* for appellant.

If there was a reservation of title by Findley he waived it and made the sale absolute when he accepted the second note and took a mortgage to secure payment. This was an election from which he cannot now recede. Appellant's mortgage was prior to Findley's, not only in time of execution, but also in time of filing. Appellant therefore has the superior lien. 11 Am. & Eng. Ann. Cases, 545, and cases cited; 65 Ark. 380; 76 Ark. 373; 64 Ark. 213; 78 Ark. 569; 82 Ark. 347; 48 Ark. 160; 88 Ark. 99.

*Lamb & Caraway,* for appellee.

The mortgage was executed and delivered to appellee by Henry at the same instant the former parted with his rights under the reserved title. The transition of his rights as the holder of a reserved title to his rights as a mortgagee was *instanter,* and all constituted but one transaction. 32 Ark. 258; 50 Ark. 108; 23 Am. & Eng. Enc. of L. 466 *et seq.;* 8 Minn. 178; 122 Ill. 657.

FRAUENTHAL, J. This was an action instituted in the chancery court by H. C. Thornton, the plaintiff below, to foreclose a mortgage executed by A. D. Henry to him on one surrey and one mare to secure the payment of a note. The mare was at the time of the institution of the suit in the possession of J. H. Findley, who was also made a defendant. The defendant Henry made default, but the defendant Findley filed an answer, in which he claimed a superior lien upon said mare for indebtedness due by said Henry to him. It appears from the testimony that Findley

sold and delivered the mare to Henry on April 12, 1908, for $150, a part of which purchase money was paid in cash, and for the balance thereof he executed a note to Findley with one J. S. St. Clair as surety thereon, due eight months after date. At the time of the sale there was a verbal agreement between the parties that the title to the mare should remain in Findley until the payment of the note. On April 18, 1908, Henry purchased a surrey from the plaintiff, and to secure the payment of a note given therefor and other indebtedness he executed to him a mortgage on said surrey and said mare. This mortgage was duly acknowledged and recorded on April 18, 1908.

Thereafter from time to time Henry made payments to Findley upon the note executed by him to Findley for the mare, amounting in the aggregate to $43, and on December 31, 1908, executed a new note for the balance thereof, $107, due one year after date, with the said St. Clair as surety thereon, and at the same time executed a mortgage on said mare to secure the payment of this last note. This mortgage to Findley was not recorded until August 27, 1909. At the time of the execution of the second note to Findley the first note executed by Henry to him for the mare was thus paid, but at that time there was no agreement, either written or verbal, that the title to the mare was thereafter reserved in the vendor. In October, 1909, Henry turned the possession of the mare over the Findley upon the note and mortgage executed by him to Findley.

The chancellor entered a decree foreclosing both mortgages, but declared that Findley was entitled to a superior lien upon the mare under the mortgage executed by Henry to him. From that portion of the decree giving to Findley a superior lien upon the mare the plaintiff has appealed to this court.

The plaintiff had the right to institute suit in the chancery court for the foreclosure of his chattel mortgage. This was one of the remedies which he had a right to pursue, and a court of equity possesses the jurisdiction to foreclose a chattel mortgage. A mortgagee of chattels may pursue any of the remedies to which he is entitled; he may sue at law for the recovery of the chattel, or for its conversion, or he may sue in equity for the foreclosure of the lien which he has thereon by virtue of the mortgage.

In Jones on Chattel Mortgages (5 ed.), § 758, it is said: "He has the same right that a mortgagee of real property has to pursue all his remedies. He may maintain a suit at law to recover the mortgage debt and also a suit at law to recover possession of the mortgaged property, and at the same time proceed under a statute or in equity to foreclose the mortgage. In the absence of any controlling statute the foreclosure of a chattel mortgage is inherently a matter of equity jurisprudence."

The sole question, then, involved in this case relates to the priority of the rights and liens of the plaintiff and the defendant Findley upon the mare. On April 12, 1908, Findley sold the mare to Henry, but at the time reserved the title thereto in the vendor. This was a conditional sale whereby the full title did not pass to the vendee, but upon the maturity of the first note given therefor the vendor had the right to determine whether the sale should be conditional or absolute, and, until he did so elect to determine, the title still remained in him, in event the purchase money for the mare was not paid at or before the maturity thereof. But by the contract of sale, although conditional, Henry obtained an interest in the mare. He had paid a part of the purchase money at the time he bought the mare, and he had an interest therein which he could mortgage. *Sunny South Lumber Co.* v. *Neimeyer Lumber Co.,* 63 Ark. 268; *Snyder* v. *Slatton,* 92 Ark. 530.

Henry had therefore a right to execute a mortgage upon the mare to the plaintiff on April 18, 1908, before which time he had purchased, though conditionally, the mare and had the possession thereof; and by virtue of such mortgage the plaintiff became entitled to a lien on all the interest which Henry then owned in the mare or which he might thereafter acquire. When the indebtedness due to Findley, the vendor, for the purchase money of the mare matured, and was not paid, he had the right to elect whether he would treat the contract for the sale at an end and thus cancel the debt, or whether he would insist on the existence and payment of said indebtedness and thus affirm the sale and make it absolute. At the time when Findley took the second note from Henry for the mare, the indebtedness for the original purchase money had matured, and part thereof had been paid. At that time two courses were open to him to pursue:

either to treat the sale at an end and to reclaim the property, or to consider the condition waived and to seek payment of the price either in cash or by note or other property. And, as a general rule, if the vendor takes a mortgage or other security for the price without then reserving title, such act will be regarded as a waiver of the condition of the original sale and an election to consider the sale as absolute. In the case of *Edgewood Distilling Co.* v. *Shannon,* 60 Ark. 133, it was held that where a vendor of personal property, sold conditionally, sued to recover its possession, and there was evidence tending to prove that after the sale the purchase money was paid partly in cash and by the execution of a new note, the vendee's title became absolute unless there was an agreement for a reservation of title in the vendor at the time of the execution of the second note therefor. *Dudley E. Jones Co.* v. *Daniel,* 67 Ark. 206; *Butler* v. *Dodson,* 78 Ark. 569; *Baker* v. *Brown Shoe Co.,* 78 Ark. 501; 35 Cyc. 675.

In the case at bar, when Findley took the second note on December 31, 1908, for the balance due upon the purchase money of the mare, there was no agreement that he reserved title thereto until the payment of that note. On the contrary, he took a mortgage upon the mare in order to secure the payment of the note, and we think that he then waived any condition reserving title and elected to consider the sale absolute. The absolute title to the mare then vested in Henry, and Findley had then and thereafter only a lien thereon by virtue of the mortgage executed to him. That mortgage was not recorded until August, 1909. Under our mortgage act (Kirby's Digest, § 5396), the filing or recording of a chattel mortgage is as essential to its validity as against third persons as any other element entering into the execution and making of a valid chattel mortgage. It is not a valid lien against other mortgagees, purchasers or creditors acquiring liens thereon until it is filed in the recorder's office, as provided by statutory law. *Fry* v. *Martin,* 33 Ark. 203; *Dodd* v. *Parker,* 40 Ark. 536; *Turman* v. *Bell,* 54 Ark. 273; *Ringo* v. *Wing,* 49 Ark. 457; *Smead* v. *Chandler,* 71 Ark. 505. "As between conflicting mortgages, the one first filed for record will have priority." *Mitchell* v. *Badgett,* 33 Ark. 387.

But it is urged that the mortgage given to Findley was

executed at the same time when the sale became absolute, and should therefore have precedence over a mortgage executed prior to that time. It is held that a mortgage given to a vendor of land for the purchase money thereof is superior to a lien acquired prior to the execution of the deed therefor where the mortgage for the purchase money is given and recorded on the land at the same time that the deed is executed therefor. But this is held upon the principle that the execution of the deed and mortgage to the vendor and the record of such mortgage are simultaneous acts, and the title to the land does not for a single moment rest in the purchaser, but merely passes through his hands and vests in the mortgagee without stopping at all in the purchaser; and that during such instantaneous passage a lien acquired before such time by another cannot attach to the title. But in such cases the passing of the title to the vendee, the mortgage back of the property by the vendee to the vendor, and the record of such mortgage must all be done simultaneously. For, if the title rests even for a short time in the vendee, with no valid lien thereon in favor of the vendor, then a prior lien secured by another on such property will have precedence over a mortgage subsequently secured by the vendor. It is upon this principle that the cases of *Blevins* v. *Rogers,* 32 Ark. 258, and *Cohn* v. *Hoffman,* 50 Ark. 108, were decided. But in the case at bar the unconditional title to the property vested in the vendee, Henry, on December 31, 1908, and the mortgage executed for the purchase money was not filed for record until the following August. During all that time the title rested in Henry, and the mortgage given by him to Findley was not during that time valid as against third persons who secured or had secured liens thereon. It follows that, as between the mortgagees, Thornton and Findley, the priority of their liens is determined by the priority in the time of the filing of their mortgages, and, the mortgage of Thornton being filed first in time, it is first and prior in law.

The decree is reversed, and this cause is remanded with directions to enter a decree in favor of the plaintiff.