The United States of America *v.* The Western & Southern Life Insurance Company.

4-4975

Opinion delivered March 7, 1938.

Fred A. Isgrig and W. H. Gregory, for appellant.

J. C. Kincannon, J. L. Shaver and Forrest S. Hannaman, for appellee.

DONHAM, J.   Pursuant to the provisions of acts of Congress, crop loans were made by the Secretary of Agriculture of the United States as follows:   Mrs. Flora Waterman, $275; R. L. Waterman, $325; and L. C. Casey, $325; all of Parkin, Cross county, Arkansas.   Each of said borrowers accompanied his loan application with a promissory note and a crop mortgage on the crops described in the mortgage, which crops were to be grown and produced during the year 1932 upon the lands described in said mortgages.   These mortgages were filed for record with the recorder of Cross county as provided by law.

The Western & Southern Life Insurance Company, appellee here, was the owner of a mortgage covering a portion of the lands on which said crops were to be produced; and in June, 1931, prior to the execution of said mortgages to the government, had instituted proceedings against R. L. Waterman and Flora Waterman in the Cross county chancery court to foreclose said mortgage, at the same time presenting a petition to the court praying that a receiver be appointed for the lands covered by said mortgage.

On the 23rd day of July, 1931, the court granted the petition for the appointment of a receiver and, by consent of all parties, appointed one R. W. Minnie as such receiver.   On January 25, 1932, the court, upon the application of the said R. W. Minnie, ordered said receivership continued until the further order of the court; and in said order, the receiver was granted authority to waive the land rent for the year 1932, in favor of a Crop Production Loan to be made by the government to enable the said R. L. Waterman and Flora Waterman to make crops during the year 1932.

Sometime during the fall of 1931, or in the early part of January, 1932, said receiver rented the entire premises upon which appellee held a mortgage to R. L.

Waterman. This rental contract was made and entered into before the procurement of the order of January 25, 1932, granting authority to the receiver to waive the land rent for 1932 in favor of Crop Production Loans for that year. For some reason or other, the receiver failed to exercise the authority granted by the court to waive the rent upon the land for the year 1932 in favor of Crop Production Loans, but the applications for such loans were approved; and the aforesaid borrowers obtained the amount of said loans from the government on the 29th day of March, 1932.

On the 12th day of October, 1932, the lands covered by the mortgage to appellee, and upon which a large portion of the crops securing the loans from the government were grown, were sold at foreclosure sale and were purchased by appellee. A Commissioner's deed was executed and delivered conveying the lands to the purchaser.

Some seventy bales of cotton were produced by the Watermans and Casey during the year 1932; and R. L. Waterman, acting for himself and the other borrowers, in the fall of 1932, delivered to said R. W. Minnie, the receiver, thirty-six bales, eleven of which were not produced on the lands involved in the receivership, but were grown upon lands individually owned by the said R. L. Waterman. At the time Waterman delivered said thirty-six bales of cotton to said receiver, he directed the receiver to sell the cotton and from the proceeds thereof, first, to pay the loans which he and the other two borrowers had obtained from the government with which to make their crops during the year 1932. Minnie, the receiver, disposed of said thirty-six bales of cotton; but, instead of paying the government loan, as directed by Waterman, he turned over the proceeds of the sale of said cotton in the amount of $1,269.29 to the appellee here to apply on the balance of the debt due appellee after the debt was credited with the price at which the lands sold at foreclosure sale. The balance of the seventy bales, it appears from the testimony, was used in paying certain expenses of producing and harvesting the crop for

that year. No part of the Crop Production Loans which the said R. L. Waterman, Flora Waterman and L. C. Casey obtained from the government in the year 1932 was ever paid.

The sum of the whole matter is that the United States Government put up the money which enabled R. L. Waterman, Flora Waterman and L. C. Casey to produce crops during the year 1932 on the lands then involved in receivership, as well as other lands individually owned by the said R. L. Waterman and not involved in receivership; and when the crop was harvested and turned over to the receiver, with instructions to pay the government loans, instead of doing so, he turned the proceeds of thirty-six bales of the crop over to the appellee here, the balance of the crop having been used to pay the expenses of growing and gathering the crop. The government of the United States received nothing, except judgments against the said R. L. Waterman, Flora Waterman and L. C. Casey, which judgments are apparently worthless. As hereinbefore stated, eleven of the thirty-six bales of cotton, the proceeds of which were turned over to the appellee, were grown upon lands not involved in the receivership, but individually owned by the said R. L. Waterman, in which the appellee had no interest whatsoever. But upon the crops grown upon same, the government of the United States held a valid and binding mortgage.

The government intervened in the suit involving the receivership and prayed judgment against appellee in order that it might recover the amount of said crop loans. The government's intervention was dismissed; and, from the order dismissing same, it has appealed to this court.

After R. W. Minnie was appointed receiver, the rents, profits and crops from the lands involved in the receivership became a part of the security for the indebtedness due the appellee.

In the case of *Cantley* v. *Turner,* 191 Ark. 607, 87 S. W. 2d 42, this court said: ''Judge HUGHES, in his excellent work on Arkansas Mortgages, at paragraph 470 thereof, says that: 'The rents and profits and crops,

after a receiver thereof has been duly appointed and qualified, are treated as part of the security. They stand in the same category as the land itself. The lien of the mortgage covers them.'"

The above statement of law as made by Judge HUGHES is supported by the following cases:. *Osburn v. Lindley,* 163 Ark. 260, 259 S. W. 729; *Deming Investment Co. v. Bank of Judsonia,* 170 Ark. 65, 278 S. W. 634; *Bank of Weiner v. Jonesboro Trust Co.,* 168 Ark. 859, 271 S. W. 952.

In the final decree of appellee's foreclosure suit, wherein the lands covered by its mortgage were subjected to payment of the debt due it, it was held that appellee was entitled to recover $12,644.17. The lands were sold to appellee for $7,500. This left a balance of $5,144.17 due appellee. Therefore, appellee was entitled to receive in payment upon said balance the crops grown upon the lands covered by its mortgage. All but eleven of the number of bales turned over to the receiver by the said R. L. Waterman were grown upon said lands; and after paying the expenses incurred in growing and harvesting the crop, appellee was entitled to the remainder as a credit upon the balance of its judgment. But, did appellee have any right to the proceeds of the eleven bales grown upon the individual lands of Waterman, which lands were not included in appellee's mortgage?

Notwithstanding the court had made an order authorizing the receiver to waive the rent on the crops grown on the lands covered by the mortgage, the receiver never executed said waiver. The government, in making its loans, it seems, thought it was not necessary to get a waiver from the receiver. It was testified by witnesses for the government that it did not occur to the agents of the government handling the crop loans that it would be necessary to procure a waiver from the receiver; and, hence, none was procured. We must, therefore, hold that the government had no prior lien upon the crops grown upon the lands involved in said receivership. But this does not dispose of the question as to whether the appellee is entitled to the proceeds of the eleven bales of cot-

ton grown upon the lands of the said R. L. Waterman not covered by the mortgage to appellee. The proceeds of these eleven bales were turned over to the appellee by Minnie, the receiver, along with the proceeds of the sale of the cotton grown upon the lands upon which appellee held its mortgage. As hereinabove stated, the said R. L. Waterman had directed the said receiver to use the proceeds of the sale of the cotton turned over to him, in payment, first, of the government crop loans. This, the receiver did not do, but turned the whole of the net proceeds of the sale of said cotton over to appellee. Under this state of the record, it is for this court to determine whether the appellee is entitled to the proceeds of the said eleven bales.

The trial court made an order directing the receiver to pay over to the appellee the proceeds of the sale of said cotton, but later set the order aside. As already stated, it is evident from the fact that eleven of these bales were grown upon lands of the said R. L. Waterman not covered by the mortgage held by The Western & Southern Life Insurance Company, that said company had no lien on said eleven bales. Said eleven bales were the individual property of the parties who had obtained the crop loans from the government; and when the cotton was turned over to the receiver, the said R. L. Waterman gave specific directions that the loans from the government secured by crop mortgages were to be paid first. It was shown in evidence that the Watermans had obtained a crop loan from the government with which to make crops for the year 1931. In the fall when the crops were gathered, thirty-two bales of cotton were turned over to Minnie, the same receiver, with instructions that the mortgage to the government be paid. Said instructions were carried out and Minnie paid the crop loans for the year 1931. Hence, when R. L. Waterman turned over to him the cotton grown during the year 1932, with instructions that the government loans be paid first, he naturally expected that Minnie would follow instructions and pay the loans. Since this was not done, but the proceeds of the sale of said cotton, includ-

ing the eleven bales in question, were turned over to the appellee to apply on the balance due on the mortgage debt, did such conduct not amount to a conversion? Appellee was not entitled to the proceeds of the sale of the eleven bales. Without the consent or knowledge of the government, the said R. W. Minnie violated the instructions given to him by the said R. L. Waterman and turned over the proceeds of the eleven bales to the appellee when the appellee had no claim whatever upon same. The lien of the government under its crop mortgages, which had been properly recorded, was a first lien on these eleven bales. The taking and the appropriation of these eleven bales was in disregard of the rights of the government and vested in the government a cause of action as for a conversion. *Barnett Brothers Mercantile Co.* v. *Jarrett,* 133 Ark. 173, 202 S. W. 474; *Sternberg* v. *Strong,* 158 Ark. 419, 250 S. W. 344.

In the Jarrett case, this court said: "Where the taking and appropriation by a third person was in disregard of the rights of the mortgagee the cause of action arises as for a conversion."

In the Sternberg case, this court said: "According to the allegations of the complaint, Ingram, without paying the mortgage indebtedness, sold a part of the mortgaged property to Sternberg without the knowledge or consent of Strong, the mortgagee. This constituted a conversion of the property and both Ingram and Sternberg were liable to Strong for a conversion of it."

In Corpus Juris, vol. 11, p. 592, the general doctrine is stated: "A third person wrongfully interfering with a mortgaged chattel may be liable for a conversion, as where he assists in a wrongful use or disposition of the property by the mortgagor. . . . All persons who join with the principal in the conversion are jointly liable with him."

In the case of *Farmer* v. *Graettinger Bank,* 130 Iowa 469, 107 N. W. 170, it is said: "A person receiving the proceeds of a wrongful sale of mortgaged chattels is guilty of conversion, although he acted in good faith."

Again it is stated in Corpus Juris, vol. 11, p. 592, Note (a), under § 68: "Where a chattel mortgage is given on an unplanted crop, any person who converts it to his own use after it is gathered with actual or constructive notice of the lien is liable to the mortgagee in an action on the case."

Again in the same note, it is stated: "A claimant of the mortgaged property who removes it and thereby destroys the security of the mortgagee becomes liable to him for damages."

In the case of *Thornton* v. *Findley*, 97 Ark. 432, 134 S. W. 627, 33 L. R. A. (N. S.) 491, the court said: "The holder of a chattel mortgage may, upon the mortgagor's default, sue at law to recover the mortgaged chattel or for its conversion, or he may sue in equity for the foreclosure of the lien which he has by virtue of the mortgage."

It is evident from the foregoing statements of the law that the United States Government was entitled to the proceeds of the sale of the eleven bales of cotton grown on the individual lands of R. L. Waterman. Since the proceeds of the sale of those eleven bales were paid to The Western & Southern Life Insurance Company, appellee here, the lower court, upon the intervention of the government, should have granted judgment against appellee for the value of said eleven bales.

We are of the opinion that the decree of the trial court is erroneous in the respect hereinabove pointed out, and that same should be reversed, and the cause remanded with directions to enter a decree in favor of the appellant, the United States of America, against the appellee, The Western & Southern Life Insurance Company, for the sum of $550, this being the value of the eleven bales of cotton which were grown upon lands not involved in receivership, nor covered by appellee's mortgage, but upon the individual lands of R. L. Waterman. It is so ordered.