**In re WATSON.**
Bankr. 530.

United States District Court
W. D. Arkansas, El Dorado Division.
July 19, 1951.

Gerland E. Patten, Tilghman E. Dixon, Little Rock, Ark., for claimants, J. W. and Margaret O'Connell.

J. R. Wilson, Paul K. Roberts, El Dorado, Ark., for claimant, W. S. Watson, and bankrupt, Brodie S. Watson.

JOHN E. MILLER, District Judge.

On June 20, 1951, the Referee in Bankruptcy, Honorable Edgar E. Bethell, filed findings of fact, conclusions of law and order in the above named case, in which he disallowed the claims of J. W. and Margaret O'Connell and W. S. Watson, as secured claims but allowed them as common claims. Thereafter, on June 28, 1951, the bankrupt, Brodie S. Watson, and claimant, W. S. Watson, filed a petition for review of the order in so far as the same is adverse to their contentions.

Pursuant thereto the Referee transmitted to the court Certified Record of Proceedings, together with original briefs filed by the parties with Referee. After receipt thereof the court granted the attorneys time within which to file additional briefs if they so desired. In accordance therewith the attorneys for Brodie S. Watson and W. S. Watson submitted an additional brief, but the attorneys for the claimants, J. W. and Margaret O'Connell, advised that they did not desire to submit an additional brief. The court has considered the Certified Record of Proceedings, the briefs of the respective parties, filed with the Referee and with the court, and a copy of a complaint filed by J. W. O'Connell and Margaret O'Connell v. United States Fidelity and Guaranty Company, Civil No. 2291, in the United States District Court, Eastern District of Arkansas, Western Division, which is attached to the brief of the Watsons. As to the complaint in the case just referred to, a certified copy thereof may be obtained and filed herein if the

attorneys for the Watsons so desire, but for present purposes, the court is treating the attached copy as a true and correct copy thereof.

The findings of fact and conclusions of law filed by the Referee reflect a thorough and accurate consideration and determination of the issues involved in this case, and normally the court would not deem it necessary to file an extended opinion, as it is doing here, which to a large extent is merely repetitious. However, in deference to the petitioners' able attorneys, and the earnestness with which they urge their contentions, the court has concluded that it should do so.

The only limitation on the scope of review by the district judge of a petition of review is that imposed by General Order 47 that "the judge shall accept his findings of fact unless clearly erroneous". 11 U.S. C.A. following Section 53; and see: 2 Collier on Bankruptcy, 14th Ed., Sec. 39.28, page 1496; In re Taylor Oak Flooring Co., D.C.W.D.Ark., 87 F.Supp. 6, 9. Here the facts found by the Referee are adequately supported by substantial evidence, and, in fact, are for the most part undisputed. The dispute arises in the inferences and conclusions drawn from the facts.

It appears that the bankrupt was born in Calhoun County, Arkansas, and resided there until he was 17, at which time he went to Little Rock in Pulaski County, Arkansas, in September, 1948, to attend business college. He has retained the same residence in Little Rock, a room in a boarding house, from 1948 until the present. After one year of training in business college, he obtained a job with J. A. Riggs Tractor Company and has remained in the employ of that company to the present time. During this time he removed nothing from his family home near Thornton, Calhoun County, Arkansas, except personal clothing, and continued to return to the family home at Thornton every week or two weeks, on which occasions he brought his laundry home for his mother to wash. In November, 1949, he desired to purchase a car, but was unable to do so because he was only 19 years old. His father, W. S. Watson, advanced $1100

on the down payment, and took title in his name to a 1949 Special Deluxe Club Coupe Plymouth. Thereafter Brodie S. Watson secured an order of the Chancery Court in and for Calhoun County removing his disabilities as a minor, his father, W. S. Watson, executed a bill of sale of the car to him, and he obtained a title certificate in his name, and a license for the car. The title certificate did not show any outstanding encumbrance on the car. Title was transferred to Brodie solely for the purpose of obtaining state license, with the verbal understanding that W. S. Watson should retain title to secure the balance due on the purchase price of the car which was being paid by Brodie at the rate of approximately $40 per month. The car was assessed for personal taxes in Calhoun County.

On January 26, 1950, while driving the car, Brodie S. Watson struck and injured J. W. and Margaret O'Connell. A short time thereafter, March 2, 1950, Brodie executed and delivered to W. S. Watson a chattel mortgage on the car to secure an indebtedness of $1180. This mortgage was filed and recorded in Calhoun County on March 18, 1950, but was never filed and recorded in Pulaski County. J. W. and Margaret O'Connell filed suit against Brodie S. Watson in the Circuit Court of Pulaski County, Arkansas, seeking damages for personal injuries, and judgments were entered in their behalf on February 2, 1951, in the amounts of $2,000 and $4,000, respectively. Writ of execution was issued on said judgments, and on March 10, 1951, the sheriff of Pulaski County levied on and took possession of the car. At the time the lien arising from this levy attached, Brodie S. Watson was insolvent, in that he had no property other than the car which had a value of approximately $1,000 and he owed approximately $7,000.

On March 27, 1951, Brodie S. Watson filed a voluntary petition praying that he be adjudicated bankrupt, and attached thereto a petition praying that the sheriff of Pulaski County, Arkansas, who had seized said car, as above pointed out, be restrained from selling same under execution. Both prayers were granted. J. W. and Margaret O'Connell filed a motion to dismiss the petition for adjudication for lack of jurisdiction, or venue, alleging that Brodie S. Watson was neither domiciled in nor a resident of the Western District of Arkansas. A hearing was held on this issue, and the Referee overruled the motion.

The bankrupt by his schedules and pleadings asserted that the car was subject to a lien in favor of his father, W. S. Watson, to secure purchase money advanced, and J. W. and Margaret O'Connell filed a petition attacking the alleged lien of W. S. Watson, and asserting the priority of their judgment lien. Formal proof of claim was filed by the O'Connells, and thereafter a response to their petition was filed on behalf of Brodie S. and W. S. Watson asserting the validity and priority of the alleged lien of W. S. Watson. Formal proof of claim was subsequently filed on behalf of W. S. Watson.

With the exception of a nominal amount owed by the bankrupt for personal taxes, the only creditors of the estate are J. W. and Margaret O'Connell, claiming on their judgment, and the father of the bankrupt, W. S. Watson, claiming the balance due on the purchase price of the car. The 1949 Plymouth is the only asset of the estate. As heretofore pointed out, the Referee disallowed both claims as secured claims, but allowed them as common claims.

It is, of course, first necessary to look at the issue raised as to the bankruptcy court's jurisdiction. Under Sec. 2, sub. a(1), National Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(1), the court has jurisdiction to "Adjudge persons bankrupt who have had their principal place of business, resided or had their domicile within their respective territorial jurisdictions for the preceding six months, or for a longer portion of the preceding six months than in any other jurisdiction". In the instant case the Referee concluded that the bankrupt was a resident of Little Rock, Pulaski County, Arkansas, in the Eastern District of Arkansas, but that his domicile was in Calhoun County, Arkansas, in the Western District of Arkansas, and the court agrees with this conclusion. The domicile of a minor child is that of its father, and until its majority ordinarily so

continues. Yarborough v. Yarborough, 290 U.S. 202, 211, 54 S.Ct. 181, 78 L.Ed. 269; Leflar, Conflict of Laws, Sec. 15, p. 75. Thus, until the removal of his disabilities as a minor, Brodie S. Watson could not have acquired a separate domicile from that of his father, which was Calhoun County, Arkansas, and thereafter, it does not appear that he did so. It is well settled that domicile and residence are not synonymous terms, and while it is possible for one person to have more than one legal residence at one time, it is quite clear that he can have only one domicile at any given time. See: Leflar, Conflict of Laws, Sec. 12, p. 68; Morris v. Gilmer, 129 U.S. 315, 328, 9 S.Ct. 289, 293, 32 L.Ed. 690. One capable of doing so may acquire a new domicile by "physical presence at a new place coinciding with the state of mind of regarding the new place as home", Leflar, Conflict of Laws, Sec. 13, p. 70, or as otherwise stated, "there must be, to constitute it, actual residence in the place, with the intention that it is to be a principal and permanent residence", Morris v. Gilmer, supra. The facts found by the Referee, all of which were not set forth above, convince the court that Brodie S. Watson did not change his domicile from Calhoun County, Arkansas, to Pulaski County, Arkansas, by his residence there during the period involved. There is nothing to indicate a "state of mind" to abandon his domicile in Calhoun County in favor of a new one in Pulaski County. And, under the law, which insists that every person have a domicile, until a new domicile is acquired, the old one continues. Leflar, Conflicts of Laws, Sec. 13, p. 70. See, also: Oakes v. Oakes, Ark., 242 S.W.2d 128. Therefore the court had jurisdiction.

Although J. W. and Margaret O'Connell are not here attacking the action of the Referee in denying their claim as a secured claim, and indeed to the contrary they urge that the action of the Referree on the whole case was correct, it may be noted in passing that the Referee was clearly correct in this respect. Under Sec. 67, sub. a(1), National Bankruptcy Act, 11 U.S.C.A. § 107, sub. a(1), "Every lien against the property of a person obtained by attach-ment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition in bankruptcy * * * shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent". The O'Connells obtained their judgments in the Pulaski Circuit Court on February 2, 1951, and the sheriff levied on the car involved on March 10, 1951. Bankrupt's petition was filed on March 27, 1951, so their lien was obtained well within the four month period. By § 67, sub. a(4), 11 U.S.C.A. § 107, sub. a(4), the Referee was authorized to adjudicate by summary proceedings the validity of the lien, and the action of the Referee in restraining the sheriff of Pulaski County, Arkansas, from disposing of the car was proper. See: 1 Collier on Bankruptcy, 14th Ed., Sec. 2.64, p. 302; 4 Collier on Bankruptcy, 14th Ed., Sec. 67.18, p. 142; and cases cited therein. And, the property involved was properly discharged from the lien and placed in the possession of the trustee. Sec. 67, sub. a(3), National Bankruptcy Act, 11 U.S. C.A. § 107, sub. a(3).

This brings the court to a consideration of the action of the Referee on the claim of W. S. Watson, the correctness of which is placed in issue by the petition for review.

When W. S. Watson gave a bill of sale on the car to his son, Brodie S. Watson, he reserved title by oral agreement to secure the balance of the purchase price. The reservation was valid. Pugh v. Camp, 213 Ark. 282, 284, 210 S.W.2d 120; and see: Anderson and Hale, Conditional Sales in Arkansas, 4 Ark.L.Rev. 19, 23. However, when W. S. Watson subsequently accepted a chattel mortgage on the car he waived the previous reservation of title, and, therefore, must rely here and stand or fall upon the strength of the mortgage. As stated in Buckeye Cotton Oil Company v. Westerfield, 186 Ark. 505, 54 S.W.2d 295, 297; "None of these cases in any way modify or change the rule announced in the case of Thornton v. Findley, 97 Ark. 432, 134 S.W. 627, 628, 33 L.R.A. (N.S.) 491. This court said in the last-mentioned case: 'And as a general rule, if the vendor takes a mortgage or other security for the

price without then reserving title, such act will be regarded as a waiver of the condition of the original sale and an election to consider the sale as absolute.' "

This rule is sound when the nature of the two situations is considered. In the case of a conditional sale the seller transfers the possession of goods to a buyer, on credit, with the understanding that title shall not pass until the buyer has paid the price. On the other hand, a mortgage transaction presupposes the vesting of a complete title in the vendee-mortgagor, and the separation and transfer back of legal title to the vendor-mortgagee as security. Thus, by his action in accepting a chattel mortgage, a vendor elects to treat the sale as having passed complete title to the vendee and waives any claim to retention of title.

■ In this state mortgages on personal property shall be recorded in the county in which the mortgagor resides, Ark.Stats.1947, § 51-1001, and "Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before; which filing shall be notice to all persons of the existence of such mortgage", Ark.Stats.1947, § 51-1002. Concerning the necessity of proper recording, the Supreme Court of Arkansas stated in Combs v. Owen, 182 Ark. 217, 219, 31 S.W.2d 127, 128: "Under these sections of the statute, this court has many times held that a mortgage is good between the parties to it even though not acknowledged and recorded, but that such a mortgage does not constitute a lien upon the mortgaged property, as against strangers, unless it is acknowledged and recorded, even though they may have actual notice of its existence. It has been further held many times that the record of a chattel mortgage in a county other than that of the mortgagor's residence is no notice to third persons." As pointed out in the statement of the facts, this mortgage was recorded in Calhoun County but was not recorded in Pulaski County where the mortgagor resided. The purpose of the recording statutes is to give notice to interested third persons of the liens claimed upon the property. It was reasonable to select the mortgagor's residence because personal property by its nature is normally situated at that place, and that is the logical place where a reasonably diligent third person should be expected to examine the records for liens or encumbrances. In this case Brodie S. Watson was actually residing Pulaski County, Arkansas, and the car was located there. He had been so residing for some 18 months and the only thing temporary about his stay was his eligibility to call for military service. In the opinion of the court the facts amply justify the Referee's conclusion that he was a resident of Pulaski County within the meaning of Section 51-1001, and, therefore the recording of the mortgage in Calhoun County afforded no notice to third persons of the mortgage.

■ Under Section 2, sub. a(2), National Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(2), a court of bankruptcy has jurisdiction to "Allow claims, disallow claims, reconsider allowed or disallowed claims, and allow or disallow them against bankrupt estates". And, as pointed out in 3 Collier on Bankruptcy, 14th Ed., Sec. 57.20, p. 259: "A creditor who presents his claim as secured and thereby indicates his desire to avail himself of his alleged security and at the same time participate with other creditors as to a possible deficiency, opens himself to a preliminary investigation as to whether or not his security is valid. It may lack the prescribed form, it may be tainted with fraud, it may be defective as a preference or other voidable transfer. Upon objection, these questions will be determined by the bankruptcy court, preferable prior to any valuation, particularly prior to conversion of the alleged security into money. If this determination is against the creditor, he will normally be allowed to prove his claim as unsecured." In the examination into the validity of W. S. Watson's claim as a secured claim, Sec. 70, sub. c, National Bankruptcy Act, as amended by Act of March 18, 1950, 11 U.S. C.A. § 110, sub. c, Pocket Part, must be considered. It is there provided: " * * * The trustee, as to all property of the bankrupt at the date of bankruptcy whether or

not coming into possession or control of the court, shall be deemed vested as of the date of bankruptcy with all the rights, remedies and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists." In regard to this provision 4 Collier on Bankruptcy, 14th Ed., Sec. 70.49, p. 1261, states: "It has been said quite aptly that this provision confers upon the trustee 'by force of law' the status of 'the ideal creditor, irreproachable and without notice, armed cap-a-pie with every right and power which is conferred by the law of the state upon its most favored creditor who has acquired a lien by legal or equitable proceedings.' (Matter of Waynesboro Motor Co., D.C.Miss., 60 F.2d 668). It is evident that this hypothetical status depends for meaning upon a substantive law which it does not explicitly indicate but which it incorporates by reference. Therefore, the trustee's powers, in every case governed by this portion of #70(c) are those which the state law would allow to a supposed creditor of the bankrupt who had, at the date of bankruptcy, completed the legal (or equitable) processes for perfection of a lien upon all the property in either the bankrupt's or the court's possession or control."

■ Thus, in the final analysis the question is whether, under the law of Arkansas, a creditor without actual notice who had successfully levied on the property involved at the date of bankruptcy would have had a superior claim to the property encumbered as it was by W. S. Watson's chattel mortgage. Under the law of Arkansas, such a creditor would have a superior claim, and therefore, so would the trustee, who stands in the position of such a creditor. While an unrecorded or improperly recorded mortgage is good as between the parties it affords no notice to third parties and is subject to the lien of a judgment creditor acquired by the issuance and levy of an execution. As expressed in Thornton v. Findley, 97 Ark. 432, 436, 134 S.W. 627, 628, 33 L.R.A.,N.S., 491: "Under our mortgage act the filing or recording of a chattel mortgage is as essential to its validity as against third persons as any other element entering into the execution and making of a valid chattel mortgage. It is not a valid lien against other mortgages, purchasers, or creditors acquiring liens thereon until it is filed in the recorder"s office". See, also: Hawkins v. Files, 51 Ark. 417, 11 S.W. 681; Cross v. Fombey, 54 Ark. 179, 15 S.W. 461; Casenote, Chattel Mortgages-Failure to Record-Effect of Actual Notice, 2 Ark.L. Rev. 241; Ark.Stats.1947, § 51-1002.

■ The above discussion of the status of the Arkansas law did not include the effect of the Title Registration legislation enacted by the Arkansas Legislature in 1949, Act 142 of 1949, Ark.Stats. §§ 75-101 to 75-191, incl. The Referee did not consider the provisions of this Act in disposing of the claim, presumably because there have been no interpretations by the Supreme Court of Arkansas and because he felt it was not necessary for the reasons stated in his discussion of the facts and the conclusions based thereon. However, in view of the language of this Act pertaining to the filing of liens and encumbrances, the court feels that the Act should be considered.

Section 75-160(a) provides: "No conditional sale contract, conditional lease, chattel mortgage, or other lien or encumbrance or title retention instrument upon a registered vehicle, other than a lien dependent upon possession, is valid as against the creditors of an owner acquiring a lien by levy or attachment or subsequent purchasers or encumbrances with or without notice until the requirements of this article have been complied with." Subsection (b) of the same section requires that a copy of the instrument creating and evidencing such lien or encumbrance shall be deposited with the department (Title Department of the Motor Vehicle Division). (Also note sub-section (c) on filing in county where payor resides) Sec. 75-161(a) provides that filing with the department shall constitute constructive notice to creditors and subsequent purchasers and encumbrancers, if filed within 10 days from date of execution such notice shall date from the time of the execution of the document, otherwise notice shall date from the time of

receipt and filing of such document by the department. Sec. 75-161(b) provides: "The method provided in this article of giving constructive notice of a lien or encumbrance upon a registered vehicle shall be exclusive except as to liens dependent upon possession" and such instruments are exempt from provisions of other recording or filing laws.

The language of Sec. 75-160(a) is plain, "No conditional sale contract * * * chattel · mortgage * * * is valid as against the creditors of an owner acquiring a lien by levy or attachment" unless the provisions of the Act are complied with. By virtue of Sec. 70, sub. c, National Bankruptcy Act, the trustee stands in the position of a creditor who has acquired a lien by levy or attachment, and since the holder of the chattel mortgage, W. S. Watson, did not comply with the provisions of the Act pertaining to filing the mortgage, the trustee's claim to the property is superior. In this regard, the court is aware of the testimony of Brodie S. Watson that he advised an employee of the Title Department of the mortgage, but to accept such testimony as true and to hold it to be a compliance with the provisions of the statute would obviously defeat the purposes thereof. Also, it is noted that he did not testify that there was "deposited with the department a copy of the instrument".

Therefore, under Sec. 70, sub. c, National Bankruptcy Act, 11 U.S.C.A. § 110, sub. c, and the substantive law of Arkansas, the action of the Referee in disallowing W. S. Watson's claim as a secured claim was correct and should be confirmed.

■ Furthermore, in order that the matter be fully determined here, the court wishes to dispose of other contentions of the petitioners not reached by the referee. Even if it be assumed that W. S. Watson did not waive his retention of title under the conditional sale by accepting the chattel mortgage (the court has found to the contrary under the law of Arkansas), the same result would be reached. While recording is not provided for in most matters involving conditional sales, it is otherwise as to motor vehicles. Ark.Stats.1947, §§ 75-160 and 75-161, discussed above, make such provisions. As in the case of the chattel mortgage, the conditional sale agreement was not filed with the department, and it too is invalid as against lien creditors. And, as the trustee occupies the position of a lien creditor under Sec. 70, sub. c, National Brankruptcy Act, the claim of W. S. Watson based on the conditional sale agreement must fail as a secured claim.

The Referee also concluded, as an alternate ground for disposition, that the mortgage in question constituted a voidable preference under Section 60, National Bankruptcy Act, 11 U.S.C.A. § 96. With this conclusion the court agrees, and as under Section 70, sub. c, the court would go one step further and include the conditional sale agreement with the mortgage.

■ A detailed discussion is not necessary, but a few points should be mentioned. According to § 60, sub. a(1), National Bankruptcy Act, 11 U.S.C.A. § 96, sub. a(1) a preference is a transfer of any of the debtor's property that is to or for the benefit of a creditor, for or on account of an antecedent debt, made or suffered by the debtor while insolvent, and within four months of bankruptcy, the effect of which will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. A preference may be avoided when it appears that the creditor receiving the preference had reasonable cause to believe that the debtor was insolvent. Sec. 60, sub. b, National Bankruptcy Act, 11 U.S.C.A. § 96, sub. b. By Sec. 60, sub. a(2), 11 U.S.C.A. § 96, sub. a(2) a transfer of property other than real property is deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee. If not so perfected prior to the filing of a petition under the Bankruptcy Act, it is deemed to have been made immediately before the filing of the petition.

In the instant case by virtue of the failure to record either the conditional sale agreement or the chattel mortgage as required by the applicable Arkansas law, the transfer was not so perfected prior to

the filing of the petition, and, therefore, for purposes of Section 60 was made immediately before the filing of the petition. See: 3 Collier on Bankruptcy, 14th Ed., Sec. 60.42, p. 929, Sec. 60.43, p. 937. With the exception of the element of "greater percentage" the crucial time at which the other elements are tested is when the transfer was "made or suffered". See: 3 Collier on Bankruptcy, 14th Ed., Sec. 60.36, p. 874. As the transfer in this case occurred immediately before the filing of the petition, it is clear that at that time there was a transfer of the debtor's property (under either the conditional sale agreement or the chattel mortgage), to or for the benefit of a creditor, for or an account of an antecedent debt (by virtue of the transfer of the debtor's or purchaser's interest immediately before bankruptcy which was after the debt had arisen), made or suffered by the debtor while insolvent (the debtor was clearly insolvent immediately before bankruptcy) and within four months of bankruptcy (the transfer occurred immediately before bankruptcy). It is equally clear that the effect of transfer would be to enable the creditor to obtain a "greater percentage", and it is obvious that at the time of the transfer, immediately before bankruptcy, the creditor had reasonable cause to believe that the debtor was insolvent. See: Dinkelspiel et al. v. Garrett et al., D.C.W.D.Ark., 96 F.Supp. 800.

Thus, the claim of W. S. Watson was properly disallowed as a secured claim on the ground of a voidable preference. It might be noted that it is usually necessary for the trustee to proceed in a plenary proceeding to avoid a preference, but in the instant case, when the question arose on the allowability of secured claims, it was properly adjudicated by the Referee. 3 Collier on Bankruptcy, 14th Ed., Sec. 60.60, p. 1033 (Summary Proceedings).

The court has examined the complaint filed by J. W. O'Connell and Margaret O'Connell v. United States Fidelity and Guaranty Company in the United States District Court for the Eastern District of Arkansas, Western Division. In that complaint the plaintiffs made certain allegations to the effect that W. S. Watson was the owner of the automobile involved herein, the object of that suit being to recover from the insurance carrier of said W. S. Watson under the theory that his son Brodie S. Watson was using the automobile with the permission of the insured, W. S. Watson. The O'Connell's action in filing that suit and in making such allegations cannot aid the petitioners here. Petitioner's claims were adjudicated by the Referee and by this court upon their contentions, that W. S. Watson was entitled to a secured claim either because of title retention or as holder of a chattel mortgage. It is immaterial what other parties allege in another court concerning the status of W. S. Watson; he stands or falls here upon his own contentions. There is no question of estoppel on the part of the O'Connells by virtue of inconsistent positions, because the claim of W. S. Watson is disallowed because of the trustee's (not the O'Connells') superior claim under Section 70, sub. c, or because of the obtainability of a lien by legal or equitable proceedings on a simple contract (not that the O'Connells had such a lien) under Section 60, sub. a(2).

The action of the Referee in disallowing the claim of W. S. Watson as a secured claim and allowing it as a common claim should be confirmed, and an order to that effect is being entered.