**In re W.E. TUCKER OIL, INC., Debtor.**

**FIRST STATE BANK OF CROSSETT, ARKANSAS, Plaintiff,**

v.

**W.E. TUCKER OIL COMPANY, INC., Defendant, Portland Bank, Intervenor.**

**No. ED 84–011M.**

United States Bankruptcy Court, W.D. Arkansas, El Dorado Division.

Sept. 18, 1984.

R.J. Brown, P.A., Little Rock, Ark., for plaintiff.

Richard E. Griffin, Crossett, Ark., for defendant.

Thomas S. Streetman, Crossett, Ark., for intervenor.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On February 1, 1984, W.E. Tucker Oil Company filed a voluntary petition for

bankruptcy under the provisions of Chapter 11 of the Bankruptcy Code. The debtor-in-possession was represented by Robert J. Brown, who also represented, E.A. "Sonny" Tucker, Sue Tucker Nolen, and Maysel Tucker. The schedules reflect that Maysel Tucker owns 148 shares of the outstanding stock, E.A. Tucker owns 107 shares, and Sue T. Nolen owns 107 shares. E.A. Tucker is the president, Maysel Tucker is the chairman of the board, and J.M. Nolen is the secretary of the debtor corporation. Maysel A. Tucker is E.A. "Sonny" Tucker's wife, and Sue T. Nolen is E.A. "Sonny" Tucker's sister.

The bankruptcy schedules reflect that the debtor-in-possession has total assets of $1,989,566 of which $1,253,890 is real property. The schedules reflect total debts of $2,584,363.

On June 1, 1984 Exxon Corporation, a member of the unsecured creditors' committee, filed a motion to disqualify Mr. Brown from representing the debtor-in-possession because of an alleged conflict of interest due to his dual representation of the shareholders of the corporation. That motion was heard on July 30, 1984 and this Court at that time sustained the motion and removed Mr. Brown from representing the debtor-in-possession because he also represented the shareholders who are creditors, both fixed and contingent, as well as equity security holders, of the debtor-in-possession. Also, there was evidence that Mr. Brown was offering settlement on behalf of the debtor-in-possession which proposed to dismiss an $800,000 preference suit against Exxon if Exxon, among other things, would dismiss suits pending in another court against E.A. "Sonny" Tucker, individually. The Court specifically found that Mr. Brown represented interests adverse to the estate.

Meanwhile, on June 1, 1984, First State Bank of Crossett filed this complaint for relief from the automatic stay.[1] The debtor-in-possession filed a response to the

Complaint for relief from the stay denying generally the allegations in the complaint.

An Order was entered on June 12, 1984 setting the matter of hearing in El Dorado on June 26, 1984. This Court travels to El Dorado once a month to hear cases pending in that division.

On June 21, 1984 Portland Bank filed a motion for intervention and an objection to the hearing date citing a conflict in its attorney's schedule and requesting the matter be continued until the next regular court date in El Dorado which was July 30, 1984. Portland Bank also filed on June 21, 1984 a pleading styled "intervention" which opposed the lifting of the stay and alleged that First State's mortgage liens were unenforceable because they were subject to being set aside as preferential transfers.

This Court, without notice or a hearing, rescheduled the hearing on the complaint for relief from the stay to July 30, 1984 in El Dorado by Order dated June 21, 1984. The First State Bank of Crossett neither objected to the rescheduling nor consented to it. On July 11, 1984 Portland Bank filed an amended response of intervention alleging that at the time of the execution of the mortgages in question E.A. Tucker was a member of the Board of Directors of First State Bank thereby rendering the bank an insider as defined by § 101(25). It was also alleged for the first time that the mortgages were given to secure debts not of the debtor-in-possession, but of another entity, Davis Industries, Inc., and therefore, the granting of the liens constitute fraudulent conveyances under § 548 of the Bankruptcy Code.

■ On the date set for the hearing on the complaint for relief from the stay, the Court removed the debtor-in-possession's attorney, as stated herein previously, and the debtor-in-possession was left unrepresented at the hearing. The debtor-in-possession is a fiduciary who represents the interests of the estate as well as its own.

---

1. This action should have been brought by motion. *See,* Rules 4001 and 9014 of the Bankruptcy Rules.

*See,* 11 U.S.C. § 1107; *Matter of Kahl Iron Foundry, Inc.,* 21 B.R. 372 (1982).

The debtor-in-possession, a corporation, acting through E.A. Tucker, the person in control and the president, showed little, if any, vigor in resisting the bank's complaint for relief from the stay either at the hearing or in pleadings filed prior thereto, and, little wonder, because the loans which the debtor-in-possession secured with a lien on its property were loans to E.A. Tucker, individually, or to his relatives, and various other business enterprises with which Mr. Tucker, individually, was associated. Complicating matters further, these loans, and the mortgage liens securing them were all made by and between the debtor-in-possession and the bank at a time when Mr. Tucker was president and the person in control of the debtor-in-possession as well as a member of the board of directors of the bank. At this stage, there is a clear-cut conflict of interest for Mr. Tucker as the fiduciary versus Mr. Tucker as the individual and is reason enough why there is a trustee in the case.

█ On the date set for the hearing on the complaint for relief from the stay, the bank insisted on proceeding regardless of the fact that the debtor-in-possession was no longer represented, and the bank pointed out, correctly, in the Court's opinion, that the stay had already been relaxed because a hearing had not been held within thirty (30) days of the filing of the complaint for relief from the stay as required by 11 U.S.C. § 362(d)(e). Because of this, the Court felt compelled to conduct a hearing even though the principal adverse interests to relief from the stay were unrepresented at the hearing, except for Portland Bank, which vigorously opposed the complaint for relief from the stay and presented a *de facto* representation of the interests of unsecured creditors. At the conclusion of the hearing, the Court took the case under advisement and imposed a stay on First State Bank under the authority of 11 U.S.C. 105(a). The parties were requested to file briefs on the propriety of imposing a stay after the automatic stay is relaxed because of the Court's failure to conduct a hearing within thirty days as well as briefs on the merits of the complaint for relief from the stay, but neither party has done so. The Court concludes that it was well within its authority in reimposing the stay under § 105. *See, In Re Brusich and St. Pedro Jewelers, Inc.,* 28 B.R. 545; *In Re Prime,* 26 B.R. 556, 7 C.B.C.2d 1283; *In Re Durkalec,* 21 B.R. 618; *In Re Kleinsasser,* 12 B.R. 452, 4 C.B.C.2d 1185, 7 B.C.D. 1275; *Memphis Bank & Trust Co. v. Brooks,* 10 B.R. 306, 7 B.C.D. 290; *In Re Walker,* 3 B.R. 213, 6 B.C.D. 161. There is authority contra. *See, e.g., In Re Wood,* 33 B.R. 320; *Cramer v. Markee,* 31 B.R. 429.

First State Bank presented testimony that it was the holder of a secured claim in the amount of $520,067 out of a total debt of $795,894.26, which is owed mostly by persons other than the debtor-in-possession. The specific notes in question were as follows:

A. Note by W.E. Tucker Oil Company dated December 31, 1980 for $43,980.77 with interest at 19% per annum;

B. Note by Bobby G. Davis for $46,133.65 dated January 9, 1981 with interest at 19% per annum;

C. Note by J.N. Nolen for $60,000 dated February 27, 1981 with interest at 19% per annum;

D. Note by James L. Sanderlin for $50,000 dated November 19, 1981 with interest at 19.5% per annum;

E. Note by E.A. Tucker, individually, for $120,000 dated January 13, 1982 with interest at 16.5 per cent per annum;

F. Note by J.L. Sanderlin for $23,500 dated January 13, 1982 with interest at 16.5% per annum;

G. Note by Davis Industries, Inc. for $20,000 dated January 13, 1982 with interest at 16.5% per annum;

H. Note by Davis Apparel Manufacturers, Inc. for $240,000 dated March 2, 1982 with interest computed at a rate equal to First National Bank of Little Rock's prime, plus 2%; and

I. Note by E.A. Tucker for $60,000, individually, dated May 22, 1978 with interest at 9%.

The note described in paragraph A was secured by a mortgage on the debtor-in-possession's real property which was filed of record on January 5, 1981 in the office of the Ashley County Circuit Clerk and that real property is described as follows:

Lot 7, Block 4, North Cross Village Subdivision of the E ½ of the SW ¼ of Section 4, Township 18 N., Range 8 W.

With the exception of the first note described above to W.E. Tucker Oil Company for $43,980.77, all of the other transactions possibly involve insiders since the note proceeds were given not to the debtor-in-possession but to the makers of the notes and benefitted E.A. Tucker, or an entity in which he was more than casually interested, or a relative of E.A. Tucker. E.A. Tucker is the president of the debtor-in-possession and is the person in control. Bobby G. Davis was identified as a general partner of E.A. Tucker and a co-shareholder with E.A. Tucker in Davis Industries, Inc.

J.L. Sanderlin was identified as a general partner with E.A. Tucker in Davis Industries, Inc. and Davis Apparel Manufacturers, Inc. and was the accountant for the debtor-in-possession. Davis Apparel Manufacturers, Inc. was identified as a corporation in which E.A. Tucker was a shareholder.

 All of the notes were secured by mortgages on real property owned by the debtor-in-possession, and those mortgages which the bank seeks to foreclose were all recorded with the Circuit Clerk of Ashley County, Arkansas on April 6, 1983[2] although the mortgages were actually given by the debtor on March 2, 1982. The petition for relief was filed on February 1, 1984. Therefore, the mortgages were recorded within one year of the filing of the bankruptcy petition.[3] The recording of the mortgages with the Circuit Clerk of Ashley County, Arkansas constituted the final step under state law to perfect the transfer of the liens from the debtor-in-possession to the bank. *See*, Ark.Stats.Anno. § 51–1002 (Repl.1971); *Thornton v. Finley*, 97 Ark. 432, 134 S.W. 627 (1911). The granting of a lien in property of the debtor-in-possession is a transfer within the meaning of 11 U.S.C. § 547 and 11 U.S.C. § 548 and such transfer is deemed to have occurred at the time the transfer is perfected, if perfected before filing. *In Re Hogg*, 35 B.R. 292 (Bky 1983); *In Re Gurs*, 34 B.R. 755; *In Re Lyon*, 35 B.R. 759; *In Re Candy Custom Builders, Inc.*, 31 B.R. 6. The transfer of the liens, therefore, as well as any payment made by the debtor-in-possession during the year prior to the date the petition was filed to the First State Bank is subject to a possible cause of action for the benefit of creditors of the estate under 11 U.S.C. § 547. From the record, it is hard to determine if the bank is undersecured, since all but one of the notes are not owed by the debtor. These transfers are also subject to attack as fraudulent conveyances as described in 11 U.S.C. § 548 since the debtor-in-possession received none of the loan proceeds in any of the notes except one. *See*, 11 U.S.C. § 548(a)(2)(A), (B)(i), (ii), (iii). Property transferred within one year of the filing of the petition in violation of either of these sections may be recovered from an insider who has benefitted therefrom or from the initial transferee, here the First State Bank, even if the transferee is not the insider. *See*, 11 U.S.C. § 550; *In Re Big Three Transportation, Inc.*, 41 B.R. 16 (1983); Pitts, "Insider Guaranties and the Law of Preferences," 55 *American Law Journal*, 343, 347 (1981). But, *see, contra, Matter of R.A. Beck Builders, Inc.*, 34 B.R. 888 (Bky 1983); *In Re Church Bldgs. and Patio Corp.*, 14 B.R. 128, 5 C.B.C.2nd 74 (Bky

---

2. With the exception of the mortgage given to secure the first note given by W.E. Tucker Oil Co. for $43,000, these mortgages were recorded more than a year prior to the filing of the bankruptcy petition, as stated previously.

3. The bank also produced evidence that it was secured by perfected liens in personal property and no question was raised as to the validity of those liens.

1981); *In Re Cove Patio Corp.*, 19 B.R. 843 (Bky 1982).

█ However, in the context of a motion for relief from the stay counterclaims are not generally considered, except that the possibility of the existence of a counterclaim is taken into account in determining whether to continue the stay. *In Re Marta Group, Inc.*, 33 B.R. 634 (Bky 1983). The legislative history of 11 U.S.C. § 362 clearly suggests this result. It is stated, thus, in the case of *In Re Vacuum Cleaners of America*, 33 B.R. 701:

> At the expidited hearing under Subsection 362(e), and at hearings on relief from the stay, the only issue will be the lack of adequate protection, the debtor's equity in the property and the necessity of the property to an effective reorganization of the debtor or the existence of other causes for relief from the stay. This hearing will not be the appropriate time at which to bring in other issues such as counterclaims against the creditor, which although relevant to the question of the amount of the debt, concern largely collateral or unrelated matters. This approach is consistent with that taken in cases such as *In Re Essex Property, Ltd.*, 430 F.Supp. 1112 (N.Dist.Calif. 1977), that in actions seeking relief from the stay, it is not the assertion of a claim which would give rise to the right or obligations to assert counterclaims. Those counterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be. Rather, they will be the subject of more complete proceedings by the trustee to recover property of the estate or to object to the allowance of a claim. However, this would not preclude the party seeking continuance of the stay from presenting evidence on the existence of claims which the Court may consider in exercising its discretion. What is precluded, is a determination of such collateral claims on the merits at the hearing. S.Rep. 95–989, 95th Cong. 2nd Sess. 55, reprinted in 1978 U.S.Code, Cong. and Ad.News 5787 at 5841; *see,*

*also, In Re Harrow Leasing Corporation*, 32 B.R. 688; *Belles Construction Co. v. Biller,* 27 B.R. 206.

The possibility of the existence of affirmative defenses have been considered grounds to deny relief. In the case of *In Re Davenport,* 34 B.R. 463 (Fla.1983) the court states:

> In the proceeding presently under consideration, not only do the affirmative defenses of preferential and fraudulent transfer under § 547 and § 548 of the Bankruptcy Code contest the validity of the subject liens, these are actions which may be maintained only in the bankruptcy forum and could not be raised as affirmative defenses in a state court. Thus, if the stay is lifted and the bank is permitted to foreclose its interest in the properties, the debtor would be deprived of these defenses. For this reason, the Court is of the opinion that the automatic stay should be extended to allow the debtor to assert his claim for preferential transfer under § 547 and fraudulent transfer under § 548 as to the three mortgages and as to the 330,000 of the 420,000 shares of Key Energy stock ... *See, United Companies Financial Corporation v. Brantley,* 6 B.R. 178 (Fla. 1980)

11 U.S.C. § 362(d) provides the procedure for lifting, modifying, or conditioning the automatic stay if either of two basic propositions are proven:

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to the stay of a act against property, if—
>
>> (a) the debtor does not have an equity in such property; and
>>
>> (b) such property is not necessary to an effective reorganization ...

█ If either paragraph 1 or paragraph 2 are established, then the stay should be lifted, modified, or conditioned. *In Re Schriver,* 33 B.R. 176 (1983); *First Connecticut Small Business Investment*

*Co. v. Ruark*, 7 B.R. 46, 7 B.C.D. 59. The party requesting relief from the stay has the burden of proof on the issue of the debtor's equity while the party opposing such relief has the burden of proof on all other issues. 11 U.S.C. § 362(g)(1) and (g)(2); *In Re Bobroff*, 32 B.R. 930 (1983); *In Re Kane*, 27 B.R. 902.

■ Here the proof is clear that no equity exists and no one offered any evidence that any of the property was or was not necessary to an effective reorganization. There was testimony which was undisputed that the property is all depreciating in value, and, were it not for the fact that a serious and bona fide issue exists regarding the transfer of the liens in question, the Court would not hesitate, on the state of the record, to grant relief from the stay. But, in order to preserve the status quo for all parties, the complaint for relief from the stay will be denied.

The trustee, however, is ordered to sell at public auction to the highest bidder, for cash or on a credit of thirty days, all the property upon which First State Bank requests relief to foreclose in state court. The sale shall be pursuant to the provisions of § 362 and all claims of liens shall attach to the proceeds of the sale. Inasmuch as the validity of First State Bank's lien is in question, no offset bidding shall be permitted by the First State Bank, provided, however, that if the First State Bank is the successful bidder, the trustee shall maintain the sale proceeds in an interest bearing account at the First State Bank until the rights of the parties in the sale proceeds are determined. The trustee shall pay from the sale proceeds the out-of-pocket costs of the sale, and all other claims against the proceeds shall be reserved for subsequent determination, including the right of the trustee to a commission from the sale proceeds superior to the lien rights as may be established. The sale shall not be final until confirmed by the Court.

IT IS SO ORDERED.